**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:09-CR-00053-TMB-DMS-02 |
| Plaintiff, | **INITIAL REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [Doc. 304]** |
| v. | |
| SABIL MUMIN MUJAHID (D-2), | |
| Defendant. | |

## I.  MOTION PRESENTED

Defendant Sabil Mujahid is charged in this multi-defendant case with a variety of crimes.

Of the forty-one counts in the Second Superceding Indictment, found at Docket 83, all but six

apply to him.  Most of the charges against Defendant Mujahid involve allegations of sex

trafficking of children and adults and promotion of prostitution.  Mujahid is also charged with a

child pornography offense, conspiracy to commit tax fraud, and identity theft.

Some of the evidence against Mujahid comes from the execution of three search warrants:

1)      Search Warrant 3:09-MJ-00033-JDR, issued on March 4, 2009, which authorized
        the search of Mujahid's residence at 2405 East 50th Avenue, Apt. #2, Anchorage,
        Alaska (hereafter Search Warrant-33).

2)      Search Warrant 3:09-MJ-00032-JDR, issued on March 4, 2009, which authorized
        the search of Mujahid's vehicle, a four-door black Mercedes with the license plate
        number ENF194 (Search Warrant-32); and

3)      Search Warrant 3:09-MJ-00048-DMS, issued on March 25, 2009, which
        authorized the search of Sidney Greene's (a co-defendant in this case) residence at
        900 South Klevin Street, Apt. #1, Anchorage, Alaska (hereafter Search Warrant-
        48).

Mujahid argues that all alleged child pornography pictures, all records related to tax offenses, and

all records related to identify theft that were seized pursuant to these three warrants and used to

support the child pornography count and the tax fraud and identity theft counts against him

should be suppressed.  He argues that suppression is warranted because the seizure of such

evidence exceeded the scope of the warrant and because the warrant was executed in the manner

of a general warrant when the agents took all computer equipment from the places searched and

conducted a general search of the equipment.

The Government filed an opposition at Docket 332.  It argues that Mujahid does not have

standing to challenge the search of Greene's residence pursuant to Search Warrant-48.  It also

argues that pornographic photographs are within the scope of the warrant.  It also argues that the

seizure of a black bag found in Greene's home was proper because it contained financial,

identification, and business records that were within the scope of the warrant and the fact that the

bag contained other incriminating information to support additional charges is not grounds to

suppress that evidence.  Finally, it argues that the computer searches were valid, pointing out that

the case Mujahid relies on, *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989 (9th

Cir. 2009) (hereafter *CDT I*) was superceded on September 13, 2010 by *United States v.

Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (hereafter *CDT II*) and that the

searches comply with the law in any event.

An evidentiary hearing was held on November 20, 2010 to take evidence about what

exactly was seized.  During the hearing, it was discovered that a fourth search warrant related to

the case existed that had not been received by the defense.  That warrant was 3:09-MJ-00201-

JDR, issued on December 16, 2009  (hereafter referred to as Search Warrant-201).  It authorized

the search of computers and electronic storage devices seized by the officers pursuant to the three

warrants listed above.  Mujahid was allowed to review Search Warrant-201 and submit any supplemental briefing or motion in relation to that search warrant.  Mujahid filed his supplement at Docket 525.  In it, he argues that Search Warrant-201 was tainted by the improper seizure and search of computers and electronic media.  He argues that the agents improperly engaged in a generalized search of the computers and electronic storage devices, which was beyond the scope of the earlier warrants, and then used information obtained from those improper searches to get a search warrant after the fact.  He also argues that any evidence obtained pursuant to Search Warrant-201 should be suppressed as a remedy for the Government's discovery violation.

The Government submitted a supplemental response at Docket 548.  In that response, the Government argues that the earlier warrants were not too general and that they properly allowed for the seizure and search of computers seized.  Furthermore, it argues that the affidavit in support of Search Warrant-201demonstrates that probable cause for the warrant was not based on information learned from a prior search of the computers.  It also asserts that there has not been a discovery violation but that if there was one, it was not intentional and no prejudice has resulted.

## II. SEARCH WARRANTS– ITEMS TO BE SEIZED

The search warrants involved in this motion all authorized the agents to search for and seize a list of items set forth in Attachment B.  Attachment B is substantially the same in Search Warrant-33, Search Warrant-32, and Search Warrant-48.  It authorized law enforcement to search for evidence of a violation of:

> Title 18 United States Code 1952 Interstate and foreign travel or transportation in aid of racketeering enterprises [and Title 18 United States Code Conspiracy]:
> a)      Any and all items related to commercial sex acts (prostitution) including, but not limited to: condoms, sex toys, sexual lubricants, sexually suggestive clothing, sexually suggestive pictures, bedding, PDA's, pagers,

credit cards, cameras, videos, identification documents, guns, currency, client or customer lists, email addresses, escort licenses, lists of rules, ledgers, journals, notebooks, items indicating payment for commercial sex acts, medical records related to prostitution activities, medication and medical supplies relating to prostitution activities, including but not limited to contraceptives, anti-inflammatory medications, and antibiotics.

b)      Any and all evidence of financial transactions related to prostitution operations, including but not limited to: monies, checks, checkbook registers, books, ledgers, bank account records, bank transaction receipts, wire transfer records, currency, financial transfers, purchases, invoices, receipts, airline tickets, records of expenditures, correspondence, files, and safe deposit box records. All credit cards, credit card statements, or handwritten notes that appear to depict credit card numbers or transactions.

c)      All cellular telephones believed to belong to [Mujahid or Greene], . . .

d)      All photographs and video related to the prostitution businesses including pictures of Mujahid and/or Greene with other women or girls previously identified as associated with the escort businesses, or pictures of said females or pictures of either of the above depicting individuals in a sexual manner.

e)      All non-commercially produced video tapes and all video recoding equipment.

f)      All digital cameras and SD cards or other electronic storage media used to save digital photo images.

g)      Any documents relating to Recruiter #2 and Recruiter #1 to include, but not limited to, names, addresses, telephone numbers, correspondence, and photographs.

h)      Any documents or items tending to show occupancy, ownership, possession or control, including but not limited to utility receipts, mortgage or rent receipts, lease, rental or sale agreements or contracts, credit cards or credit card receipts, letters, other correspondence, and bills related to [property to be search]. . . .

j)[1]     Any and all evidence of prostitutes, recruiters, employees or other person associated with the prostitution business described in this warrant, to include but not limited to Seductions Escort Service and internet postings. Such evidence is to include but is not limited to: all identification cards (both valid and false identification cards/documents), luggage tags, suitcases, paperwork, diaries, journals, photographs, correspondence, and other belongings.

---

[1] In Search Warrant-48 (the search warrant for Greene's residence) this paragraph is actually labeled subparagraph i) and not j). The warrants for Mujahid's property included an additional paragraph that is not of relevance here.

k)[2]　　　All computer hardware capable of collecting analyzing, creating, displaying, converting, storing, concealing, or transmitting any of the items referred to in paragraphs a, b, c, d, e, f, g, h, and j or information in electronic, magnetic or optical formats. . . .

(Doc. 305-1 at 4-5; Doc. 305-4 at 11-12; Doc. 305-5 at 6-7).

The affidavit by Special Agent Jolene A. Goeden supported each search warrant. The Affidavit contained a recitation of facts regarding a Federal Bureau of Investigation (FBI) and Anchorage Police Department (APD) investigation of Defendants Sidney Greene and Sabil Mujahid on suspicion of prostitution, sex trafficking, and related racketeering enterprises. The affidavit described Greene's business activities, Sabil Mujahid's business activities, property and vehicles associated with the suspects, alleged victim accounts of the suspects' activities, and information that connected Greene and Mujahid's prostitution businesses. It then described what items could be located in the places to be searched that would constitute evidence of the suspected crime of prostitution, sex trafficking, and related racketeering enterprises. (Doc. 305-1, Doc. 305- 3, Doc. 305-5).

### III. DISCUSSION

#### A. Mujahid's Standing to Challenge the Search Warrants

Fourth Amendment rights cannot be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). In order to have a viable Fourth Amendment claim, the person asserting his or her rights must have a legitimate expectation of privacy. *Id.* at 143 (citing *Katz v. United States*, 389 U.S. 347, 353 (1967)). The defendant bears the burden of establishing his legitimate expectation

---

[2] In Search Warrant-48 (the search warrant for Greene's residence) this paragraph is actually labeled subparagraph j) and not k). The warrants for Mujahid's property included an additional paragraph that is not of relevance here

of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *United States v. Zermeno*, 66 F.3d 1058, 1061 (9th Cir. 1995). To demonstrate a legitimate expectation of privacy, the person must show that he or she has a subjective expectation of privacy in the area searched that society is prepared to recognize as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

It is undisputed that Mujahid had a legitimate expectation of privacy in his home and his vehicle. Thus, he can clearly challenge Search Warrant-33 and Search Warrant-32. But Mujahid's ability to challenge any search that occurred in Greene's residence is in dispute. The Government correctly asserts that there is no coconspirator exception to the standing rule and each defendant must demonstrate that his or her own expectation of privacy was violated by the police conduct at issue. *United States v. Lingenfelter*, 997 F.2d 632, 636 (9th Cir. 1993).

It is also clear that Mujahid does not assert that he had a legitimate expectation of privacy in Greene's residence as a whole. Mujahid's assertion of privacy related to Greene's residence is on narrower grounds. He argues that he had a legitimate expectation of privacy in one of the bags seized and searched in Greene's residence, and thus he argues he can challenge any search of that bag even though it was stored in Greene's residence.

Mujahid had an expectation of privacy in any of closed containers that he stored in Greene's residence. *See United States v. Davis*, 332 F.3d 1163, 1167 (9th Cir. 2003) ("A person has an expectation of privacy in his or her private, closed containers and does not forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner.") (internal quotations omitted). Mujahid took the stand during the evidentiary hearing to demonstrate that one of the containers found in Greene's home, a

black travel bag, that contained various paperwork was actually his and stored in Greene's house with an expectation that it remain private. (Tr. at 5-8). This Court concludes that the bag was in fact Mujahid's and that it was closed and stored in Greene's residence with the expectation that it would remain private. The Government argued during the hearing that Mujahid waived his expectation of privacy in the black bag based on recorded phone calls that were played during the hearing. This Court concludes that the recordings did not clearly demonstrate that Mujahid waived his expectation of privacy in the black bag. Therefore, Mujahid can challenge the seizure of documents from the black bag as being outside of the scope of Search Warrant-48.

**B. Particularity of the Warrants**

In his supplemental memorandum at Docket 525, Mujahid mentions that the first three search warrants were too general in nature—that is, they lacked particularity. The Court will address the issue of particularity generally, even though the Court believes Mujahid's particularity argument is more specifically geared toward the warrants' broad authorization to seize and search electronic media.

A warrant must be specific to prevent law enforcement officers from conducting general, exploratory searches at their discretion. *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006). However, the level of specificity required is not a precise formula but rather depends on the particular circumstances and the type of evidence sought. *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). "A warrant describing a category of items is not invalid if a more specific description is impossible. " *Id.* (citing *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986)). "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the

scope of the warrant be limited by the probable cause on which the warrant is based." *Hill*, 459

F.3d at 973 (quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)). In other words,

when reviewing challenges to a warrant's specificity, courts consider one or more of the following

factors:

> (1) whether probable cause exists to seize all items of a particular type described in
> the warrant; (2) whether the warrant sets out objective standards by which executing
> officers can differentiate items subject to seizure from those which are not; and (3)
> whether the government was able to describe the items more particularly in light of
> the information available to it at the time the warrant was issued.

*Adjani*, 452 F.3d at 1148 (internal quotations omitted). "While a search warrant must describe

items to be seized with particularity sufficient to prevent a general, exploratory rummaging in a

person's belongings, . . . it need only be reasonably specific, rather than elaborately detailed, . . .

and the specificity required varies depending on the circumstances of the case and the type of

items involved." *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996) (internal quotation

marks and citations omitted).

In this case, the items listed in Attachment B to the three search warrants are sufficiently

particular in that nothing listed is vague in nature. The officers executing the warrants could tell

from the warrant what types of things were approved for seizure. *See United States v. SDI Future

Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). In this case, the Search Warrant itself contains

an overarching limitation in that it specifies the criminal activity suspected, racketeering. *See

United States v. Bridges*, 344 F.3d 1010, 1016-17 (9th Cir. 2003) ("The Fourth Amendment

requires search warrants to state with reasonable particularity what items are being targeted for

search or, alternatively, what criminal activity is suspected of having been perpetrated."); *Adjani*,

452 F.3d 1148 (upholding a warrant's specificity in part because the warrant's affidavit, which

the court found to be adequately incorporated into the search warrant itself, began by limiting the search for evidence of a specific crime); *United States v. Spilotro*, 800 F.2d 959, 964 (9th Cir. 1986) ("Reference to a specific illegal activity can, in appropriate cases, provide substantive guidance for the officer's exercise of discretion in executing the warrant."). The Search Warrant then gives examples of the types of racketeering evidence the agents are authorized to seize. The examples provide guidance about what specific racketeering crimes Defendant Mujahid is suspected of having committed because the specific items are clearly related to prostitution. Thus, in this case, the search warrants on their face limit the agents to seizing evidence of racketeering related to commercial sex acts and prostitution. It so happens that evidence of this type of crime is broad-reaching but that does not mean the warrant lacks particularity. The specific items of evidence authorized for seizure are not vague, especially given the nature of the investigation and the type of evidence that would be involved.

## C. Search of the Electronic Storage Devices and Seizure of Documents Stored Within

### 1. Broad authorization to search computers and electronic storage devices

The three warrants challenged in this motion also allow the agents to seize computers and electronic storage devices that could contain documents and evidence. Defendant Mujahid argues that the search warrants were overbroad in allowing computers and other storage media to be seized wholesale and without adequate search protocols and limitations. In his original motion, he cites to *CDT I* in support of his argument.

The CDT cases arose out of a federal investigation into steroid use by professional baseball players. During the investigation, the government developed probable cause to believe that ten players had tested positive for steroids. As a result, the government obtained various

search warrants and subpoenas for records and data located in the facilities of Comprehensive Drug Testing, Inc., which ran the drug testing program for Major League Baseball, and Quest Diagnostics, which performed the lab tests on the urine samples of the baseball players.

The *CDT I en banc* opinion arose from the government's appeal of three separate district court rulings granting CDT's various motions to quash subpoenas and return property pursuant to Rule 41. The facts and procedural history underlying the case are complex and will not be set forth in this report. In summary, the Ninth Circuit upheld the various lower court decisions, which had ruled against the government. The Ninth Circuit used the opportunity to discuss the issue of privacy as it relates to computer storage of data. In *CDT I*, the court directed magistrate judges be vigilant in following the Ninth Circuit's guidance when issuing a warrant to examine a computer hard drive or other electronic storage medium or when a search could result in the seizure of a computer. Its guidance consisted of five specific protocols:

1. Magistrates should insist that the government waive reliance upon the plain view doctrine in digital evidence cases. . . .
2. Segregation and redaction must be either done by specialized personnel or an independent third party. . . . If the segregation is to be done by government computer personnel, it must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.
3. Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora. . . .
4. The government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents. . . .
5. The government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept. . . .

*CDT I,* 579 F.3d 989 at 1006.

After this motion was filed, the Ninth Circuit superceded *CDT I* by issuing *CDT II.* In

*CDT II* the Ninth Circuit did not change the outcome of the first en banc decision in *CDT I*. It did, however, remove the five protocols from the majority opinion. Based on *CDT II*, the five protocols listed above are not mandatory limitations that must be placed in every search warrant dealing with the search and seizure of computers and related hardware. However, the Ninth Circuit still cautioned law enforcement and lower courts about the risks involved in broad authorization to search electronic storage devices. It noted that over-seizing is an inherent part of computer seizures and that judicial officers will have to be more vigilant "in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures." *CDT II*, 621 F.3d at 1177. Based on *CDT II*, a judge reviewing a warrant application has the authority to place, and should consider placing, limitations on searches of computers in order to make sure the searches are constitutionally reasonable. *CDT II*, 621 F.3d at 1175-77; *see also United States v. Payton*, 573 F.3d 859, 864 (9th Cir. 2009) ("We believe that it is important to preserve the option of imposing [search] conditions when they are deemed warranted by judicial officers authorizing the search of computers.").

Mujahid argues that the three warrants challenged in this motion allow general searches because they authorize the wholesale seizure and search of computers without any sort of screening process to protect intermingled data that does not fall within the scope of the warrant. Mujahid correctly asserts that the search warrants did not have search protocols. But searching protocols are not required, and so this Court cannot find them to be defective based on technical requirements, but the Court must still consider whether the authorization for a broad search of computers and electronic storage devices without screening protocols or other conditions was

reasonable given the investigation detailed in the supporting affidavit.

Looking at the facts of this case, the search warrants were reasonable in their scope given the allegations set forth in the warrants' supporting affidavits. In this case, there was probable cause to believe that Mujahid's and Greene's computers were actually instrumentalities of the crime because the affidavit details how computers and other digital devices were used to further the alleged prostitution businesses being investigated. The affidavit also described how evidence related to the prostitution businesses was expected to be stored on electronic storage devices. The agents were not searching computers and other storage devices that were known or expected to have large amounts of protected, third-party information stored inside of them. Also, as required under *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006), and *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982), Agent Goeden's affidavit explained to this Court why it was impractical and infeasible to search the computers on site, and thus the agents received prior authorization to remove all electronic storage devices from the places searched.

### 2. Seizure of items outside of the scope of the warrant during search of computers

Mujahid argues that the agents initially searching the computers and devices seized pursuant to the three warrants obtained information outside the scope of the warrant—evidence of tax fraud and identity theft—when searching on those computers. Nothing in the record demonstrates that the agents in fact observed and seized evidence from the computers and storage devices that was outside the scope of the warrant upon their initial search. Even if they had, that does not require the Court to suppress all evidence obtained from the search of Greene's home or his computers, just those items outside the scope. *Tamura*, 694 F.2d at 597. And, in this case, the Court does not have anything on the record to delineate what specific evidence was taken from the

computers outside of the scope of the warrant. A general assertion that all tax documents should be suppressed is not specific enough, given the record shows some tax documents were seized in paper form and given that nothing on the record demonstrates what documents were alleged to have been seized from the computers. Thus, even if the Court thought the search was too broad and resulted in seizure of items outside of the scope of the warrant, which it does not, it could not issue a blanket ruling that all tax evidence needs to be suppressed. The Court would need more specific information.

Furthermore, the agents obtained a subsequent search warrant in order to search the seized computers—Search Warrant-201. That warrant allowed agents to search the computers and digital storage devices for evidence related to tax fraud and identity theft. Thus, any tax documents found on the computers were seized pursuant to a separate warrant supported by probable cause. At the hearing, the defense asserted that it had never received that warrant in discovery. The Court provided Mujahid time to review the warrant and submit more motions or briefing as necessary. Mujahid submitted his supplemental argument at Docket 525 and argued that the warrant was tainted by the impermissibly broad search initially conducted by agents. He argues that agents observed evidence of tax fraud and identity theft when searching the computers pursuant to the first three warrants and then used that illegally gained information to get the subsequent warrant. Upon review of the affidavit in support of Search Warrant-201, it does not appear to be based on any information gleaned from the officers' initial search of the computers. It does not discuss what, if anything, was observed on the computers. Instead, it appears that all the supporting facts in the application are from paper documents seized during the execution of the prior warrants and from information learned from subsequent tax investigations. Therefore,

even if the Court were to conclude that the original search was too broad under the Fourth Amendment (which it does not), it cannot conclude that all tax fraud and identity theft evidence on the computers and electronic storage devices should be suppressed. That evidence was obtained pursuant to a subsequent warrant supported by probable cause and independent of any information taken from the original search of the computers. *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989) (describing the independent source exception to the exclusionary rule as one that allows admission of evidence not derived in any way from the illegal conduct).

### 3. Good faith exception

This Court also notes that even if the search warrants authorized an unreasonably broad search given the Ninth Circuit's CDT opinions, the exclusionary rule would not apply based on the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*, even if a search warrant is found to be in violation of the Fourth Amendment, the exclusionary rule does not apply to suppress the evidence seized by officers acting in reasonable reliance on that search warrant, if it was issued by a detached and neutral magistrate. *Id.* at 920-22. In other words, if the officers relied in good faith on the warrant's validity, courts do not suppress the evidence obtained pursuant to that warrant. *Clark*, 31 F.3d at 835. "For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007). The search is per se unreasonable—i.e., Leon's good faith exception does not apply— in four circumstances:

> (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant,

acting only as a 'rubber stamp' to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found [so] that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith.

*Crews*, 502 F.3d at 1136 (citing *Leon*, 468 U.S. at 923-26). In this case, none of the four

circumstances set forth above are present. Thus, Leon's good faith exception would apply and

suppression would not be warranted.

### 4. Discovery sanction

As a side argument, Mujahid contends that all the evidence taken from the computers

pursuant to Search Warrant-201 should be suppressed because the Government failed to turn that

warrant over in a timely fashion. This Court ordered all discovery to be produced by February 9,

2010. Mujahid asserted that he never received the warrant. There is nothing on the record to

suggest that the Government acted in bad faith in regards to this warrant. *See United States v.

Finley*, 301 F.3d 1000 (9th Cir. 2002) (stating that exclusion of evidence is a harsh remedy for a

discovery violation unless that violation was willful or motivated by a desire to obtain a tactical

advantage). Furthermore, the issue was identified in November of 2010, about one year before the

set trial date. There was plenty of time for Mujahid to review the warrant and present any pre-trial

litigation regarding that warrant. Indeed, the Court gave Mujahid additional time to present any

follow-up arguments or briefing related to that warrant. Thus, there was no prejudice to his

defense. *See United States v. Baker*, 10 F.3d 1374, 1398 (9th Cir. 1998) (recognizing that a court

should look at the feasibility of curing the prejudice with a continuance when deciding on a

remedy for a discovery violation), *overruled on other grounds*. Suppression of evidence derived

from Search Warrant-201 is not required or justified in this situation.

**D. Seizure of Photographs**

Mujahid argues that the agents executing the warrant went beyond the scope of the search warrants when they seized alleged child pornography photographs. He therefore asserts that the evidence supporting Counts 32-34 should be suppressed. First, this Court notes that Counts 33 and 34 are charges against Greene only. They do not relate to Mujahid. Second, this Court has already recommended that most of the child pornography evidence seized from Greene's home be deemed within the scope of the warrant. The District Court adopted that recommendation. Therefore, the only evidence at issue is the child pornography evidence supporting Count 32. The agents had authority to seize sexually suggestive photographs within paragraph a) of Attachment B. Mujahid has not argued that the child pornography photograph constituting the basis for the charge is not sexually suggestive. Indeed, he did not submit the specific evidence into the record and instead just generally argued that anything supporting a child pornography charge is outside the warrant. But just because a sexually suggestive photograph, which is within the scope of the warrant, may also happen to be evidence of child pornography does not make the seizure improper even though the warrant application did not mention child pornography. *Adjani*, 452 F.3d at 1150-51 (upholding the introduction of certain emails in support of a conspiracy charge when those emails were within the scope of the warrant and just happened to also support a conspiracy charge that was not expressly contemplated in the warrant).

**E. Seizure of Documents in Black Bag**

Mujahid challenges the seizure of some documents located inside his black bag. He argues that any tax documents in that bag should not have been seized because they were not

listed items in Search Warrant-48. The Government introduced the documents retrieved from that black bag into evidence during the November 19 hearing. Those documents were admitted as Government Exhibit 3. Agent Goeden testified about each document and whether the person linked to that document was known to be associated with the alleged prostitution enterprise at the time of the seizure.

This Court has closely reviewed Attachment B of Search Warrant-48. Paragraph i) of attachment B allowed the agents to search for evidence related to prostitutes, recruiters, employees, or other persons associated with the prostitution business described in the warrant. It listed some examples of what that evidence could entail. Those examples were identification cards and documents (both valid and false), luggage tags, suitcases, paperwork, diaries, journals, photographs, correspondence, and other belongings. But the warrant also made clear that this was a non-exhaustive list. Any evidence that could be used to identify prostitutes, recruiters, employees, and other people associated with the prostitution business was within the scope of the search warrant. Unlike the paragraph d), which only allowed the agents to seize photographs of Greene or Mujahid with women or girls "previously identified as associated with the escort business," paragraph i) does not contain such a limitation.

Paragraph a) of Attachment B allowed the agents to seize all items related to commercial sex acts. The listed examples included identification documents, client lists, ledgers, notebooks, and medical records. Again, the specific examples were a non-exhaustive list. In addition, paragraph b) of Attachment B allowed the agents to seize any and all evidence of financial transactions related to prostitution operations. The list of examples in paragraph b) included bank account records, financial transfers, invoices, receipts, records of expenditures, correspondence,

and files.

This Court has closely reviewed the documents in the black bag to see if they fit within the three paragraphs of Attachment B. This Court concludes that the seizure of the whole bag was proper because it was like a file of papers that contained evidence reasonably within the scope of the warrant. As noted above, paragraph b) allowed agents to seize files that were evidence of financial transactions related to the prostitution operations. Based on pictures of the black bag that were submitted during the evidentiary hearing as Defendant's Exhibit E, upon opening the bag, there were a few plainly visible items: a stamp with Mujahid's name on it; a letter from the social security administration; and an envelope from a tax preparation company, H&R Block. Therefore, someone opening it would have known that this was Mujahid's bag that had some tax and identification documents inside. This Court finds that Mujahid's tax documents are financial documents related to the prostitution business, especially given the fact that he was one of the main suspects being investigated for operating a sex trafficking business and given the fact that tax documents provide evidence about financial transactions and income. Upon opening the bag and seeing the few items on top of the stack of papers, the agents knew there was evidence reasonably within the scope of the search warrant inside the bag, and therefore seizure of the whole bag was proper because it was one bag of documents that this Court considers to have been a single file containing financial documents related to the business and the other documents did not need to be separated out before seizure. *See United States v. Beusch*, 596 F.2d 871, 876-77 (9th Cir. 1979) (noting that as long as a single file or ledger appears at the time of the search to contain some evidence reasonably related to the purposes and within the scope of the warrant, the officers did not need to separate every paper within that file and holding that suppression was not

required where agents seized a single file and two ledgers, each of which contained multiple pages of information some of which was covered by the warrant).

This Court also concludes that even looking at the documents related to the tax offenses inside the black bag individually, they all were within the scope of the warrant. Some of the documents found inside the bag simply have handwritten notations on them with names and identifying numbers such as a birth date, or a phone number, or a social security number. Such documents were clearly within paragraph i) and a) of Attachment B to Search Warrant-48 because they were reasonably considered identification documents or possible client lists.

Some of the documents inside the bag were letters or other correspondence related to social security issues. Again, these documents were related to identification of prostitutes, recruiters, or people associated with the business and thus were reasonably within the scope of the warrant under paragraph i). The purpose of paragraph i) was to allow the agents to seize evidence that identifies who could have been involved as a prostitute, recruiter, or otherwise. Indeed, the language of paragraph i) did not contain the limitation that only identification evidence related to people previously identified as involved in the business could be seized. Therefore, as long as the evidence could reasonably have been considered evidence that identifies people who were involved, it was within the scope of the warrant. The fact that a suspected sex trafficker had multiple social security documents associated with a handful of different women in his possession mades it reasonable for the agents to have considered such documents to be evidence of people involved in the business.

Some of the documents in the black bag were official tax documents, such as tax returns or Internal Revenue Service forms related to earned income credit. As stated above, this Court

concludes that any of Mujahid's tax documents are clearly within the scope of the warrant as the agents could have reasonably considered such documents evidence of financial transactions related to the suspected prostitution business. As for the tax documents located in the bag not associated with Mujahid or Greene, this Court finds that these documents are also within the scope of the warrant under paragraph i) because they are evidence of people associated with the prostitution business. As was the case with the social security documents, the fact that Mujahid has tax filings of a variety of women in his possession while being suspected of trafficking women and girls, makes it reasonable for the agents to have seized such documents as falling within the purpose and scope of the warrant, specifically paragraph i). Such tax documents would likely help the agents identify who was involved in the suspected prostitution business.

Even if the District Court were to disagree that all tax documents in Exhibit 3 were within the scope of the warrant, based on Agent Goeden's testimony, this Court notes that many of the tax documents were associated with people who were previously identified by the agents as being involved in the business. This Court believes that those documents, like Mujahid's tax documents, still fall within the search warrant under paragraph b) because the agents could have reasonably considered those tax returns and documents to be evidence of financial transactions related to the prostitution business. Thus, if the District Court were to disagree with this Court's conclusion that the bag as a whole could be seized or that all the tax documents located inside the bag could be seized for identification purposes, this Court would recommend that the only documents falling outside the scope of Search Warrant-48 are the tax documents of people not previously identified as being associated with the business. There are only a few of those documents: the tax return for H.E. found at Exhibit 3, SW03-00000891; the tax documents

located at Exhibit 3, SW03-00000923 – 00000925; the tax return for A.L. found at Exhibit 3, SW03-00000930, and the tax return for M.L found at Exhibit 3, SW03-00001003.

## V. CONCLUSION

Based on the foregoing,  this Court respectfully recommends that Defendant Mujahid's Motion to Suppress Evidence be DENIED.

DATED this 7th day of September, 2011, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, September 16, 2011.**  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-89 (9th Cir. 1980), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation.  United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, September 23, 2011.**  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).